**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IGOR KALYTA, et al., : | CIVIL ACTION NO. 07-1333 (MLC) |
| Plaintiffs, : | **MEMORANDUM OPINION** |
| v. : |  |
| VERSA PRODUCTS, INC., et al., : |  |
| Defendants. : |  |

**COOPER, District Judge**

Plaintiffs Igor Kalyta ("Kalyta") and his wife Oksana Maydanyuk (collectively "Plaintiffs") commenced this action against defendants Versa Products, Inc. ("Versa"), Home Depot, U.S.A., Inc. ("Home Depot"), Louisville Ladder ("LL"), G & L Products, Inc. ("G & L"), David R. Lambert ("Lambert"), and Grupo IMSA ("Grupo") (collectively, "Defendants"), seeking recovery for injuries Kalyta suffered falling from a ladder. (Dkt. entry no. 1, Compl.)[1] Defendants move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure ("Rule") 56 on Kalyta's claim for lost wages, arguing that the Immigration Reform and Control Act of 1986, 8 U.S.C. § ("Section") 1324a, et seq. ("IRCA") bars that claim. (Dkt. entry no. 28.) Plaintiffs oppose the motion. (Dkt. entry nos. 29, 32.)

---

[1] It appears from the docket that Home Depot and LL are the only parties actively participating in this litigation. Thus, the Court will also use the term "Defendants" when referring only to those two parties.

The Court decides the motion on the papers without oral argument, pursuant to Rule 78(b). The Court, for the reasons stated herein, will deny the motion.

## BACKGROUND AND PROCEDURAL HISTORY

The facts underlying this action are tangential to this motion for summary judgment on the lost wages claim and will thus be summarized briefly. Kalyta alleges he purchased a ladder in March 2004 from Home Depot, manufactured by G & L, and distributed by Versa. (Compl. at ¶ 15.) On July 21, 2005, Kalyta alleges he was using the ladder in a foreseeable manner, according to manufacturers' instructions, to perform his job installing a satellite dish approximately twelve feet above the ground. (Id. at ¶ 17.) After several minutes, Kalyta alleges, the ladder collapsed, causing him severe injury. (Id. at ¶ 18.)

Plaintiffs brought this action on March 22, 2007, asserting ten claims against Defendants, inter alia, that they (1) were negligent in making the ladder, selling it, or failing to warn of its dangers, (2) fraudulently or negligently misrepresented the ladder's safety, (3) were strictly liable for its malfunction, and (4) violated the Consumer Product Safety Act, 15 U.S.C. Section 2051, in failing to report that the same ladder had been the subject of other actions to recover damages for personal injury. (See generally id.) Plaintiffs seek, among other damages, "[c]ompensatory damages for . . . loss of income." (Id.

2

at ¶ 89.)  This Court has jurisdiction pursuant to 28 U.S.C. Section 1332.

Defendants now contend that Kalyta should not be permitted to recover for past and future lost wages because he is not, and was not at the time of the accident, authorized to work in the United States.  (Dkt. entry no. 28, Def. Br. at 1-3.)  Defendants assert that Kalyta came to the United States on a student visa, but instead of enrolling in school he immediately began working, first doing asbestos removal and then installing satellite dishes.  (Id. at 2.)  In support of this argument, Defendants submit a copy of Kalyta's visa, his driver's license, and his Social Security card which specifically notes that the number was valid for work only with authorization from the Immigration and Naturalization Service.  (Dkt. entry no. 28, Ex. C at 3, Soc. Sec. Card.)[2]  Defendants also provide a portion of Kalyta's deposition, in which he testified that he was never a student here, but came to the United States on a student visa that expired in 2007.  (Dkt. entry no. 28, Ex. A, 6-12-08 Kalyta Dep. at 8, 19.)[3]

---

[2] The Court finds the copies of the documents in Exhibit C practically illegible.  However, for purposes of this motion and pursuant to the certification made by counsel for Home Depot and LL, the Court assumes they say what the Statement of Material Facts avers they say.  (Dkt. entry no. 28, Stmt. Of Mat. Facts.)

[3] Plaintiffs alternately allege Kalyta was "lawfully employed" by JBS Dish Inc. and the Dish Network.  (Pl. Opp'n at 2, 4.)  The Court is satisfied that by this, Plaintiffs mean Kalyta did not

**DISCUSSION**

**I.  Summary Judgment Standard**

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.  Rule 56 provides that summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  To make this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

**II.  Standards of Recovery for Undocumented Workers**

"Each person is entitled to the equal protection of the law" and "every alien, whether in this country legally or not, has a right to sue those who physically injure him."  Hagl v. Jacob Stern & Sons, Inc., 396 F.Supp. 779, 784 (E.D. Pa. 1975) (citing Sugarman v. Dougall, 413 U.S. 634, 641-42 (1973); Graham v. Richardson, 403 U.S. 365, 371 (1971); Torao Takahashi v. Fish & Game Comm'n, 334 U.S. 410 (1948); Yick Wo v. Hopkins, 118 U.S.

---

violate IRCA by fraudulently obtaining his position, but that Kalyta's employer chose to hire him despite what his documents said.  (Pl. Opp'n at 4-5 ("Kalyta did not gain employment illegally . . . Nowhere do Defendants allege that Plaintiff misrepresented himself in any way . . . Instead, it was Dish Network who violated IRCA policies, not Plaintiff.")).

356 (1886)); see also Lozano v. City of Hazleton, 620 F.3d 170, 194 (3d Cir. 2010) ("whatever a person's immigration status, an alien is surely a person entitled to Due Process Clause protections . . . The Supreme Court therefore has certainly considered judicial challenges brought by persons lacking lawful immigration status") (internal quotation and citation omitted); Mischalski v. Ford Motor Co., 935 F.Supp. 203, 204 (E.D.N.Y. 1996) ("a plaintiff's illegal alien status is not a bar to recovery in federal court").

 Defendants do not assert that Kalyta's recovery of non-economic damages would conflict with IRCA.  (See Def. Br.) However, the question of economic damages is different because of the national policy embodied in IRCA, which is a "comprehensive scheme prohibiting the employment of illegal aliens in the United States."  Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 147 (2002).  Hoffman is the most recent Supreme Court case to address the rights of undocumented workers in the face of IRCA, and arose in the context of an action contesting an order of the National Labor Relations Board ("Board") awarding back-pay to an undocumented worker for his improper termination under the National Labor Relations Act.  Id. at 140-42.  The Hoffman discussion of IRCA is helpful here:

> As we have previously noted, IRCA "forcefully" made combating the employment of illegal aliens central to "[t]he policy of immigration law."  INS v. Nat'l Ctr. for Immigrants' Rights, Inc., 502 U.S. 183, 194 and n.8 (1991).

> It did so by establishing an extensive "employment verification system," § 1324a(a)(1), designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States, § 1324a(h)(3). This verification system is critical to the IRCA regime. To enforce it, IRCA mandates that employers verify the identity and eligibility of all new hires by examining specified documents before they begin work. § 1324a(b). If an alien applicant is unable to present the required documentation, the unauthorized alien cannot be hired. § 1324a(a)(1).
> Similarly, if an employer unknowingly hires an unauthorized alien, or if the alien becomes unauthorized while employed, the employer is compelled to discharge the worker upon discovery of the worker's undocumented status. § 1324a(a)(2). Employers who violate IRCA are punished by civil fines, § 1324a(e)(4)(A), and may be subject to criminal prosecution, § 1324a(f)(1). IRCA also makes it a crime for an unauthorized alien to subvert the employer verification system by tendering fraudulent documents. § 1324c(a). It thus prohibits aliens from using or attempting to use "any forged, counterfeit, altered, or falsely made document" or "any document lawfully issued to or with respect to a person other than the possessor" for purposes of obtaining employment in the United States. §§ 1324c(a)(1)-(3). Aliens who use or attempt to use such documents are subject to fines and criminal prosecution. 18 U.S.C. § 1546(b). . . .
> Under the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies. Either the undocumented alien tenders fraudulent identification, which subverts the cornerstone of IRCA's enforcement mechanism, or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations.

Id. at 147-48 (footnote omitted). The Hoffman Court noted it was asked to permit the "award [of] backpay to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud," and it held that "awarding backpay to illegal aliens runs counter to policies underlying IRCA, policies the

Board has no authority to enforce or administer." Id. at 147-49. The Supreme Court further concluded that "allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." Id. at 151.

The question before the Court, not specifically addressed by Hoffman or the Third Circuit Court of Appeals, is whether an individual can recover for economic losses in the personal injury tort context when that individual cannot legally obtain work in the United States.

**III. Analysis**

    **A.   IRCA**

After Hoffman, courts have attempted to reconcile IRCA with the availability of worker's compensation and personal injury economic damages. See Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 239 n.21 (2d Cir. 2006). The highest federal court addressing this situation, the Second Circuit Court of Appeals in Madeira, heard the appeal from a jury verdict in a personal injury action under New York state law awarding compensatory damages for lost earnings to an undocumented alien worker, as well as out-of-pocket expenses and pain and suffering. Id. at

7

222. The court analyzed the three different ways IRCA might preempt state law - express preemption, implicit "field" preemption, and implicit "conflict" preemption - and determined that IRCA does none of these vis-a-vis New York state law. Id. at 237-43. The court concluded that where "1) the wrong being compensated is personal injury, conduct not authorized by IRCA; (2) it was the employer and not the worker who violated IRCA by arranging for employment; and (3) the jury was instructed to consider the worker's removability in assessing damages," New York could, consistent with IRCA, allow an injured worker to be compensated with lost earnings at United States pay rates. Id. at 228. Madeira distinguished the holding in Hoffman, noting that "the injury being remedied in Hoffman Plastic was termination while the wrong being compensated in this case is disabling personal injury." Id. at 236.

   Following Madeira, Hocza v. City of New York, No. 06-3340, 2009 WL 124701, at *4 (S.D.N.Y. Jan. 20, 2009) determined lost wages were recoverable in a negligence claim, stating "neither [Madeira nor Balbuena v. IDR Realty LLC, 6 N.Y.3d 338 (2006)] held that a claim for lost earnings by an undocumented alien should be treated differently than such a claim 'by any other injured person.'" Hocza concluded that plaintiff's immigration status could not be introduced for the possibility that he would

be deported, but it could be used to address its "impact on opportunities for employment in the United States." Id.

Defendants urge the Court instead to adopt the reasoning of the two District Court cases that have found an IRCA conflict in this situation, Veliz v. Rental Serv. Corp. USA, Inc., 313 F.Supp.2d 1317 (M.D. Fla. 2003) and Hernandez-Cortez v. Hernandez, No. 01-1241, 2003 WL 22519678, at *7 (D.Kan. Nov. 4, 2003). But these cases are distinguishable. In Veliz, the evidence indicated that the plaintiff had obtained his position using fraudulent or counterfeit documents. 313 F.Supp.2d at 1335-36. Here, there is no allegation that Kalyta did anything similar, such as fraudulently obtaining documents in someone else's name or altering his own documentation.[4]

The Veliz court also curiously stated that "while awarding workers' compensation benefits is not inconsistent with the decision rendered in Hoffman, awarding lost wages is. Backpay and lost wages are nearly identical; both constitute an award for work never to be performed." Id. at 1337. However, the court's characterization of workers' compensation as insurance fails to adequately distinguish it from lost wages, ignoring that the

---

[4] Kalyta's Social Security card puts the reader on notice that he may not have permission to work. Although Defendants argue the intent to misuse his student visa counts, they cite no authority for this proposition, and thus the Court cannot conclude at this time that Kalyta's conduct falls within the meaning of IRCA. (See Def. Br. at 5-6.)

9

former, too, is a payment for work not performed, as well as being a substitute remedy for tort liability.  See id. (where the court itself states that "[i]n addition, 'workers' compensation . . . supplants tort liability'").  Moreover, Veliz discusses Florida worker's compensation law, whereas as we discuss infra, New Jersey courts have in fact likened workers' compensation to personal injury recovery.  Hernandez-Cortez similarly followed Hoffman in a negligence action brought by individuals present in the United States illegally and injured during transport to North Carolina in search of work.  2003 WL 22519678, at *7.  But the court there noted plaintiff was in the country illegally, and concluded that this status "precludes his recovery for lost income based on projected earnings in the United States."  Id. (emphasis added).

    Defendants in Figueroa v. Williams, Nos. 05-56 – 05-62, 2010 WL 5387599, at *8-9 (S.D. Tex. Dec. 17, 2010) also argued that allowing recovery of lost wages ran afoul of IRCA.  There, in determining whether to apply American or Mexican and Honduran law in a wrongful death action, the court stated that "Texas law does not require citizenship or the possession of immigration work authorization permits as a prerequisite to recovering damages for loss of earning capacity" but that "[t]he injured party . . . is required to introduce sufficient evidence which enables the jury to reasonably measure earning capacity prior to the injury."  Id.

at *8. In part because there was no evidence decedents had ever worked in Texas, and because "decedents were not consumers of any product designed, manufactured, sold, licensed, or inspected in the State of Texas," the court found applying American law "impractical." Id. at *8-9. In contrast, the source of this litigation here is a product Kalyta purchased as a consumer in New Jersey.

Other District Courts have confronted but not squarely decided the issue. See Anderson v. Cnty. of Salem, No. 09-4718, 2010 WL 3081070, at *15 (D.N.J. Aug. 5, 2010) (declining to address in the absence of evidence of plaintiff's alleged undocumented status); Davila v. Grimes, No. 09-407, 2010 WL 1737121, at *2 (S.D. Ohio Apr. 29, 2010) (declining to decide on motion to compel, but determining that immigration status is relevant to claim for lost wages in tort action); Zuniga v. Morris Material Handling, Inc., No. 10-696, 2011 WL 663136, at *4 (N.D. Ill. Feb. 14, 2011) (determining only that "inquiry into Zuniga's immigration status could lead to admissible evidence bearing on any claim or defense"). Many state courts, including those of New York, Pennsylvania, Connecticut, and New Hampshire, as well as that of the District of Columbia, have found that IRCA does not preempt state law on lost wages in workers' compensation cases. See, e.g., Asylum Co. v. D.C. Dep't of Emp't Servs., 10 A.3d 619, 632-33 (D.C. 2010) (finding IRCA does not preempt

11

relevant portion of the District of Columbia Workers' Compensation Act and permitting lost wages disability payments to undocumented worker after employer discovered illegal status and terminated employment). (See also Pl. Opp'n at 12-14.)

The Third Circuit Court of Appeals has not addressed this question. Given the disagreement among federal courts, the Court next turns to New Jersey state law.

**B.   New Jersey State Law**

While the parties provide little actual discussion of New Jersey state law on economic damages, it appears that:

> The principal goal of damages in personal-injury actions is to compensate fairly the injured party. Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. 643, 651 (N.J. App. Div. 1984). Fair compensatory damages resulting from the tortious infliction of injury encompass no more than the amount that will make the plaintiff whole, that is, the actual loss. Ruff v. Weintraub, 105 N.J. 233, 238 (1987). "The purpose, then[,] of personal injury compensation is neither to reward the plaintiff, nor to punish the defendant, but to replace plaintiff's losses." Domeracki v. Humble Oil & Ref. Co., 443 F.2d 1245, 1250 (3d Cir. 1971). . . .
> An injured party has the right to be compensated for diminished earning capacity. Smith v. Red Top Taxicab Corp., 111 N.J.L. 439, 443 (E. & A. 1933). The measure of damages for tort recovery encompassing diminished earning capacity can be based on the wages lost as a result of the defendant's wrongdoing. Ibid. That measure includes the value of the decrease in the plaintiff's future earning capacity. Coll v. Sherry, 29 N.J. 166, 176 (1959) (holding that plaintiff has right to be compensated for any future earnings that will probably be lost as result of injuries caused by defendant's wrongdoing). When the effects of injury will extend into the future, "the plaintiff is entitled to further compensation-for [the] capacity to earn in the future has been taken from [the plaintiff], either in whole or in part." Robert J. Nordstrom, Income Taxes and Personal Injury Awards, 19 Ohio St. L.J. 213, 217 (1958).

Caldwell v. Haynes, 136 N.J. 422, 433 (1994) (though also acknowledging that "the evaluation of such a decrease in future earning capacity is necessarily complicated by the uncertainties of the future") (parallel citations omitted).

The New Jersey Supreme Court has not yet spoken on the availability of these damages to individuals not authorized to work in the United States.  But the New Jersey Appellate Division has held that "a well established body of law holds that illegal aliens have rights of access to the courts and are eligible to sue therein to enforce contracts and redress civil wrongs such as negligently inflicted personal injuries."  Montoya v. Gateway Ins. Co., 168 N.J. Super. 100, 104 (N.J. App. Div. 1979). Defendants urge this case no longer applies because it was decided before Congress passed IRCA (Def. Rep. at 7-8), but Mendoza v. Monmouth Recycling Corp. reaffirmed this sentiment. 288 N.J. Super. 240, 248 (N.J. App. Div. 1996) ("We fully subscribe to that proposition.").[5]

While Mendoza determined the rights of workers to workers' compensation, the decision favorably compares workers' compensation to personal injury law.  Id.  In determining that workers' compensation is a personal injury remedy, the court

---

[5] Notably, even Crespo v. Evergo Corp., 366 N.J. Super. 391, 399 (N.J. App. Div. 2004), cited by Defendants infra, recognizes this Montoya principle.

13

implied that the latter is also available to undocumented workers:

> [W]orkers' compensation rests upon both contract and tort principles-the contract right in effect substitutes for the tort right an employee would otherwise have.  It would not only be illogical but it would also serve no discernible public purpose to accord illegal aliens the right to bring affirmative claims in tort for personal injury but to deny them the right to pursue the substitutionary remedy for personal injuries sustained in the workplace.

Id.  Most importantly, the Mendoza court observes, "[s]urely, the effect on the worker of his injury has nothing to do with his citizenship or immigration status.  If his capacity to work has been diminished, that disability will continue whether his future employment is in this country or elsewhere."  Id. at 247.  The Court agrees.

Defendants cite the more recent Crespo to argue that New Jersey courts no longer subscribe to the reasoning in Montoya or Mendoza after Hoffman.  (Def. Rep. at 8-9.)  In Crespo the plaintiff undocumented worker was precluded from damages as a result of her allegedly improper termination due to pregnancy discrimination.  But the Crespo court only held that IRCA barred economic damages "[i]n the context of plaintiff's claims." Crespo, 366 N.J. Super. at 394.  There the plaintiff had presented false information to be hired and "plaintiff's claims ar[o]se solely from her termination," not from any injury.  Id. at 401.  Here, Kalyta does not assert an improper termination or any other adverse employment action.  There is also no allegation

14

that Kalyta presented any documents, other than those he was issued, to be hired by his then-employer, who, in any case, is not a party to this lawsuit.

The Court is mindful that Crespo held "where the governing workplace statutory scheme makes legal employment a prerequisite to its remedial benefits, a worker's illegal alien status will bar relief thereunder."  Id. at 399.  But Defendants have not identified any New Jersey authority that states legal employment is in fact a prerequisite to recovering lost wages in a personal injury action.  Cf. Bollinger Shipyards, Inc. v. Dir., Office of Worker's Comp. Progs., 604 F.3d 864, 879 (5th Cir. 2010) (citing Mendoza for favorable personal injury-workers' compensation comparison, but applying the Longshore and Harbor Workers' Compensation Act, which does not require mitigation and where eligibility was not "contingent on [plaintiff] continuing to violate the IRCA or evade immigration authorities").[6]  In the absence of such definitive authority, and considering the language of Mendoza, the Court concludes that neither IRCA nor New Jersey law prohibits lost wages damages for undocumented

---

[6] A more recent New Jersey case, Serrano v. Underground Utils. Corp., 407 N.J. Super. 253, 271 (N.J. App. Div. 2009), declined to rule on the availability of the Prevailing Wage Act ("PWA") to undocumented workers at such an early stage of the litigation, but speculated that "it is at least arguable that enforcing the PWA's provisions requiring employers to pay proper wages for work already performed, as to undocumented aliens, furthers the goals of [IRCA]."

workers in the personal injury tort context, and thus the Court will not bar Kalyta from pursuing them either.[7]

The Court, in addition, will not grant Defendants' alternative request to bar Plaintiffs from presenting any proofs, but does not rule on their admissibility at this time, including the economic loss expert report.  (See dkt. entry no. 28, Ex. D.) The Court for now merely notes how other District Courts have treated similar evidence.  See, e.g., Cruz v. Bridgestone/Firestone N. Am. Tire, LLC, No. 06-538, 2008 WL 5598439, at *6-7 (D.N.M. Aug. 29, 2008) (expert economist report calculating injured undocumented worker's lost wages inadmissible under Daubert because based on American wages only and did not consider the possibility of deportation, back-and-forth migration, or workers' wages in Mexico); Garay v. Mo. Pac. R. Co., 60 F.Supp.2d 1168, 1173 (D. Kan. 1999) (expert's failure to consider decedent's illegal status rendered his opinion as to future lost wages "wholly unreliable"); see generally Madeira,

---

[7] The Court is somewhat concerned about Kalyta's ability to mitigate damages consistent with IRCA (Def. Br. at 11), but will defer any specific admissibility decisions at this time.  The Court cannot conclude that requiring non-employer tortfeasors to make plaintiffs whole through the payment of economic damages will encourage employers to hire undocumented workers.  But concern for either party gaining a windfall is legitimate.  As in New York, "it may well be" that, if necessary, New Jersey "will develop a jury instruction to ensure that injured undocumented workers who cannot lawfully mitigate lost United States earnings are not awarded more in damages than workers who can lawfully do so."  Madeira, 469 F.3d at 247 n.28.

469 F.3d at 225 (where "jury was allowed to consider plaintiff's undocumented work status in awarding any compensatory damages for lost earnings").

**CONCLUSION**

For the reasons stated supra, the Court will deny the motion.  The Court will issue an appropriate Order.[8]

```
                                    s/ Mary L. Cooper
                                  MARY L. COOPER
                                  United States District Judge
```

Dated:    March 17, 2011

---

[8] The Court notes that Plaintiffs, Home Depot, and LL have taken no steps to prosecute their respective claims against Versa, G & L, Lambert, and Grupo.  The Court will dismiss all claims and cross-claims asserted against these defendants.  See Fed.R.Civ.P. 41; L.Civ.R. 41.1.